UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SOFIA Y. KOUTSEVA, | Case No. 2:17-CV-3021 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| WYNN RESORTS HOLDING, LLC, et al., | |
| Defendant(s). | |

Presently before the court is defendant Wynn Resorts Holdings, LLC's motion to dismiss. (ECF No. 10). Plaintiff Sofia Koutseva filed a response (ECF No. 13), to which defendant replied (ECF No. 14).

**I.   Background**

In this case, plaintiff alleges violations of Title VII and NRS 613.330 through 613.435, inclusive, based on claims of discrimination and hostile work environment. Plaintiff also alleges retaliation in violation of Title VII and deprivation of rights in violation of 42 U.S.C. § 1983.

Plaintiff worked as a massage therapist for defendant from November 26, 2008 to June 24, 2017. (ECF No. 1 at 3-8). Plaintiff alleges that after she joined the company's massage advisory board in 2013, she began experiencing harassment. *Id.* at 3-4.

The board conducted regularly scheduled meetings to address, among other things, the concerns of company employees. *Id.* During these meetings, the issue of the company's "book-balancing" policy was raised, which was meant to ensure massage therapists were allocated the same number of clients. *Id.* Plaintiff alleges it soon became apparent that "certain therapists had fewer appointments and desired to have more, while other therapists were given additional

appointments with guests on a consistent basis." *Id.* The board wanted to create a "book-balancing team" to remedy this problem. *Id.*

Plaintiff alleges that she attempted to meet with defendant's employee relations department to obtain a copy of the company's book-balancing policy to no avail.[1] *Id.* Plaintiff alleges that shortly after she attempted to meet with employee relations, lead therapist Uriel Samaniego "privately approached plaintiff, and in a hostile manner stated that he was going to blame plaintiff for each and every problem that subsequently arises due to [her] attempts to change things." *Id.* at 4. Plaintiff alleges that following this incident, co-workers told her that "the big-man wanted her out and was going to get rid of [her]." *Id*. Plaintiff reported this incident to her supervisor, Erika Valles. *Id.*

On December 28, 2013, plaintiff received her first record of conversation (ROC) for a guest complaint and was reprimanded. *Id.* Plaintiff alleges that prior to this incident, she had never been reprimanded for guest feedback. *Id.*

On March 25, 2016, plaintiff was reprimanded by Valles for not saying "hi" to her and other leadership team members. *Id.* Plaintiff alleges that Valles's attitude during this meeting was "disconcerting and offensive." *Id.* Plaintiff alleges that Valles continued to reprimand her for failing to smile and not saying "hi." *Id.* On June 2, 2016, plaintiff met with defendant's employee relations representative, Sandra Rodriguez, and told her that she was experiencing harassment. *Id.*

On or about November 18, 2016, plaintiff was written up for a guest complaint. (ECF No. 10-1 at 3). Plaintiff alleges that she complained to human resources after this incident. *Id.* On February 25, 2017, plaintiff alleges she was written up a second time for crossing her arms at work. *Id*. Plaintiff alleges that other similarly situated massage therapists were not disciplined for crossing their arms. *Id.*

On or about June 2, 2017, plaintiff filed a complaint with the EEOC. (ECF No. 13 at 5). On June 16, 2017, plaintiff was placed on suspension pending investigation ("SPI") for another guest complaint. (ECF No. 10 at 2). Plaintiff was terminated on June 24, 2017. *Id*. On August 2,

---

[1] In her complaint, plaintiff mistakenly refers to defendant's employee relations department as "human resources." (ECF No. 10 at 2). The court will refer to this department as "employee relations."

**James C. Mahan**
**U.S. District Judge**

2017, plaintiff filed a charge with the Nevada Equal Rights Commission ("NE RC"). *Id.* at 3. On September 11, 2017, plaintiff received a right to sue letter from the EEOC. (ECF No. 1 at 2).

**II.      Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

As an initial matter, the court acknowledges that plaintiff is *pro se*, and therefore her filings should be held to a less stringent standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

*A.* § 1983 claim

To state a claim under 42 U.S.C. § 1983 "a plaintiff (1) must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Naffe*, 789 F.3d at 1036. While generally not applicable to private parties, a § 1983 action can lie against a private party when the alleged infringement of federal rights is "fairly attributable" to the state. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

"[The] under color of state law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (holding private insurers were not acting "under color of state law" when they withheld worker's compensation payment pending review pursuant to a Pennsylvania law). "[T]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* at 52.

Here, defendant is a private business. (ECF No. 10 at 7). Plaintiff has not alleged any facts suggesting that defendant or its employees acted under color of state law or that their conduct was "fairly attributable" to the state. *See Kirtley*, 326 F.3d at 1092. Moreover, the violation of rights created by Title VII cannot form the basis of a § 1983 civil rights claims. *Learned v. City of Bellevue*, 860 F.2d 928, 933 (9th Cir. 1988). Accordingly, the court will grant defendant's motion to dismiss with regard to plaintiff's § 1983 claim. *See Kirtley*, 326 F.3d at 1092.

B.  *Administrative exhaustion requirement*

A federal court must possess jurisdiction over an action to hear the dispute. *Weeping Hollow Avenue Trust v. Spencer*, 831 F.3d 1110, 1112 (9th Cir. 2016). The objection that a federal court lacks subject-matter jurisdiction may be raised at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). If a court determines at any time that it lacks subject matter jurisdiction over an action, it must dismiss or remand the case as appropriate. *See Weeping Hollow Avenue Trust*, 831 F.3d. 1110, 1112 (9th Cir. 2016).

Prior to filing a lawsuit for employment discrimination based upon Title VII or Chapter 613 of the Nevada Revised Statutes, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge.[2] *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).

"When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973). "Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which

---

[2] Title VII and the ADEA use the same analysis to determine whether a plaintiff has satisfied the administrative charge requirement. *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990).

can reasonably be expected to grow out of the charge of discrimination." *B.K.B.*, 276 F.3d at 1100 (quoting *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)) (holding plaintiff's claim of discriminatory layoff was "like and reasonably related" to allegations of discriminatory failure to recall and rehire). "Forcing an employee to begin the administrative process anew after additional occurrences of discrimination in order to have them considered by the agency and the courts would erect a needless procedural barrier." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (quoting *Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

In deciding whether a retaliation claim is reasonably related to the charge filed by an employee with the EEOC, the court may consider such factors as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (quoting *B.K.B.*, 276 F.3d at 1099). A plaintiff's civil claims are reasonably related to allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1205 (9th Cir. 2016) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002)).

The court construes the language of EEOC charges "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B.*, 276 F.3d at 1100. Since it is anticipated that lay persons will continue to initiate EEOC action without legal assistance, it is hypertechnical to insist on absolute compliance with formal pleading requirements. *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 790 (9th Cir. 1982). The administrative charge required by the Title VII does not demand procedural exactness. *Id.* It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminating parties and the alleged discriminatory acts. *Id.*

Here, defendant claims that plaintiff did not administratively exhaust her disparate treatment and hostile work environment claims because they were not included in the charges she filed with NERC or the EEOC. (ECF No. 10 at 11). Defendant argues plaintiff's disparate

treatment and hostile work environment claims are therefore barred for lack of subject matter jurisdiction. *Id*.

Although plaintiffs' disparate treatment and hostile work environment claims are not included in her NERC or EEOC charges, they may nonetheless be adjudicated along with her other Title VII claims so long as they are "like or reasonably related" to the allegations contained in her NERC charge. *See Lyons*, 307 F.3d at 1104. Plaintiff's NERC charge alleges that she was retaliated against when she was written up on February 25, 2017, for crossing her arms at work, after she complained to human resources on or about November 18, 2016. (ECF No. 10-1 at 3). Further, plaintiff alleges that other similarly situated massage therapists were not disciplined for crossing their arms at work. *Id.*

An EEOC investigation into plaintiff's claim that she was retaliated against because she filed a complaint with employee relations would have included an investigation into the complaint that initiated the EEOC charge as well as any other complaints plaintiff filed with employee relations. *See Farmer Bros. Co.*, 31 F.3d at 899. At least two of the complaints plaintiff filed with employee relations alleged harassment or "hostile treatment." (ECF No. 13 at 4-5). Therefore, an investigation into hostile work environment could "reasonably [have been] expected to grow" out of plaintiff's retaliation claim, and the court has jurisdiction to consider this claim. *See Farmer Bros. Co.*, 31 F.3d at 899.

Although plaintiff's NERC charge does not allege "disparate treatment," it does allege that "other similarly situated massage therapists who crossed their arms were not disciplined." (ECF No. 10-1). This language was sufficient to apprise the EEOC of a disparate treatment claim. *See B.K.B.*, 276 F.3d at 1100 ("[T]the crucial element of a charge of discrimination is the factual statement contained therein."). Therefore, the court has jurisdiction to consider this claim. *See Farmer Bros. Co.*, 31 F.3d at 899

Because plaintiff's hostile work environment and disparate treatment claims are "like or reasonably related" to the charges contained in the complaint she filed with NERC, the court holds that plaintiff exhausted her administrative remedies with regard to those claims. Thus, the court

has jurisdiction to consider plaintiff's hostile work environment and disparate treatment claims. *See Vasquez*, 349 F.3d at 646.

### C. Disparate treatment

In her response, plaintiff alleges that she is a woman and is at least 40 years of age. (ECF No. 13 at 7). However, plaintiff does not specify whether she plans to proceed under Title VII or the ADEA. *Id*. In the interest of judicial efficiency, the court will address both claims.

#### 1. Title VII and Chapter 613 disparate treatment

To establish a *prima facie* claim of discrimination under the theory of disparate treatment, a plaintiff must plausibly allege: (1) she is a member of a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action because of her membership in the protected class; and (4) similarly situated individuals outside of her protected class received more favorable treatment. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

Here, it is undisputed that plaintiff is a woman and suffered an adverse employment action when she was terminated. (ECF No. 14 at 4). However, plaintiff fails to plausibly allege that she suffered any adverse employment action *because of* sex. *See* (ECF No. 1). Rather, plaintiff repeatedly asserts her theory that she was harassed because she "began to question company policy violations." (ECF No. 13 at 3-9). Further, although plaintiff alleges that "similarly situated massage therapists who crossed their arms were not disciplined," she does not identify which protected class she is referring to, age or sex. (ECF No. 10-1 at 3).

Plaintiff does not allege any facts that would lead to an inference of discrimination based on sex.[3] In addition, plaintiff has not adequately alleged that individuals outside of her protected class were treated more favorably. *See Leong*, 347 F.3d at 1124. Accordingly, the court will grant defendant's motion to dismiss with regard to plaintiff's Title VII individual disparate treatment

---

[3] Plaintiff alleges that after Uriel Samaniego approached her about the book-balancing policy, co-workers told her "the big-man wanted her out and was going to get rid of plaintiff." (ECF No. 1 at 4). However, nowhere in her complaint or response does plaintiff allege that defendant made comments evidencing sex-based animus. *See* (ECF No. 1); (ECF No. 13).

**James C. Mahan**
**U.S. District Judge**

- 8 -

claim. *See Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir. 2000) ("Disparate treatment arises when an employer treats some people less favorably than others because of their . . . sex.").

   *2. ADEA disparate treatment*

To state a prima facie case of age discrimination, a plaintiff must allege she was (1) at least forty years old, (2) performing the job satisfactorily, (3) discharged, and (4) replaced by a substantially younger employee with equal or inferior qualifications. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 745-46 (9th Cir. 2003).

Generally, an employee can satisfy the last element of a prima facie ADEA case only by providing evidence that he or she was replaced by a substantially younger employee with equal or inferior qualifications. *Diaz*, 521 F.3d at 1208. Where a discharge occurs in the context of a general reduction in the employer's workforce, a plaintiff need only show "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination."[4] *Coleman*, 232 F.3d at 1281.

Here, plaintiff does not allege that she was replaced by a substantially younger employee or that her termination was part of a general reduction in workforce. (ECF No. 1). Accordingly, the court will grant defendant's motion to dismiss regarding plaintiff's ADEA disparate treatment claim. *See Diaz*, 521 F.3d at 1208.

   *D. Hostile work environment*

In order to succeed on a claim of hostile work environment under the ADEA or Title VII, employees must show: (1) that they were a member of a protected class, (2) that they were subjected to unwelcome verbal or physical harassment, (3) the harassment was sufficiently severe or pervasive so as to alter the terms or conditions of employment, and (4) the harassment was because of their membership in a protected class. *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005).

---

[4] The reason for this difference is that in most reduction-in-force cases no replacements will have been hired. *Diaz*, 521 F.3d at 1208.

- 9 -

Harassment is actionable only if it is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). "This standard requires an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive." *Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 368 (1993).

Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 369. These standards for judging hostility are sufficiently demanding to ensure that this cause of action "does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Here, plaintiff's complaint fails to plausibly allege that the harassment she suffered was *because of* her membership in a protected class. *See* (ECF No. 1). Plaintiff alleges two specific incidents of harassment. First, plaintiff alleges that after she inquired about the book-balancing policy, director Uriel Samaniego approached her "in a hostile manner" and told her that "he was going to blame plaintiff for each and every problem that subsequently arises due to [her] attempts to change things." (ECF No. 1 at 6). Second, plaintiff alleges that on March 25, 2016, she was written up by her supervisor, Erika Valles, for failing to say "hi" to Valles and other leadership members. (ECF No. 1 at 7). Plaintiff alleges that Valles's attitude during this meeting was "disconcerting and offensive." (ECF No. 1 at 7).

These incidents in themselves do not create a plausible inference of sex or age based harassment. *See Oncale*, 523 U.S. at 80 ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."). Further, plaintiff does not allege that Valles, Samaniego, or any other employee ever harassed her *because of* sex (or age).

Plaintiff alleges only one comment referencing gender, namely that after Uriel Samaniego approached her about the book-balancing policy, co-workers told her "the big-man wanted her out and was going to get rid of plaintiff." (ECF No. 1 at 4). However, this single comment was not sufficiently severe or pervasive to create a hostile work environment. *See Faragher*, 524 U.S. at 788 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment.").

Plaintiff has not adequately alleged a hostile work environment based on plaintiff's sex or age. Accordingly, the court will grant defendant's motion to dismiss regarding plaintiff's hostile work environment claim. *See Oncale*, 523 U.S. at 80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex.").

*E. Retaliation*

Plaintiff alleges two retaliation claims. First, plaintiff alleges she was retaliated against when she was written up for crossing her arms at work after she complained to employee relations about harassment. (ECF No. 10-1 at 3). Second plaintiff alleges she was retaliated against when she was terminated on June 24, 2017, twenty days after she filed a charge with the EEOC. (ECF No. 13 at 5). The court will address plaintiff's retaliation claims in turn.

*1. First retaliation claim*

To establish a claim of retaliation under Title VII, an employee must prove that (1) the employee engaged in a protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the employee's protected activity and the adverse employment action.[5] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee or applicant (1) because they have opposed a practice that Title VII forbids (opposition clause), or (2) because they have made a charge, testified, assisted, or participated in a Title VII

---

[5] Should plaintiff decide to bring her retaliation claims under the ADEA, the analysis would be the same. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) ("Section 623(d) is the ADEA equivalent of the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a) . . .").

investigation, proceeding, or hearing (participation clause). *Sias v. City Demonstration Agency*, 588 F.2d 692, 694 (9th Cir. 1978). Title VII's opposition clause protects employee opposition not just to practices that are actually made unlawful under the Title VII, but also to practices that an employee could reasonably believe were unlawful. *See Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).

Here, plaintiff's complaint to employee relations does not qualify as participation. *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) (holding that the purpose of the participation clause is to "protect the employee who utilizes the tools provided by Congress to protect his rights"). Although plaintiff has failed to allege a plausible claim of hostile work environment or discrimination, she may nonetheless succeed on a retaliation claim if she can show that she had a "reasonable belief" that the conduct she opposed was unlawful. *See E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) (citing *Sias v. City Demonstration Agency*, 588 F.2d 692, 695-96 (9th Cir. 1978)).

Here, based on the facts plaintiff alleges, no reasonable person could have believed they were being discriminated against in violation of Title VII or the ADEA. *See Breeden*, 532 U.S. at 271 (holding no reasonable employee could have believed Title VII was violated in a single incident where plaintiff's supervisor read a sexually explicit comment aloud from an applicant's profile). Plaintiff does not allege any facts to show the harassment she suffered was because of sex or age. Rather, plaintiff claims she was singled out for harassment because she inquired about the company's book-balancing policy. (ECF No. 1 at 6).

No reasonable person could have believed the conduct plaintiff describes was unlawful. *See Breeden*, 532 U.S. at 271. Therefore, plaintiff's complaint to employee relations is not a protected activity. Accordingly, the court will grant defendant's motion to dismiss regarding plaintiff's first retaliation claim. *Id.*

2. *Second retaliation claim*

a. *Whether plaintiff's claim is temporally deficient*

Defendant alleges that plaintiff cannot bring her second retaliation claim because she filed a complaint with NERC on August 2, 2017, more than one month *after* she was terminated.

Therefore, plaintiff could not have been terminated in retaliation for filing a complaint with NERC. However, plaintiff alleges that she filed a complaint with the EEOC on June 2, 2017, twenty days *prior* to her termination. Because plaintiff's EEOC charge is not before the court, plaintiff's factual allegation that she filed a charge with the EEOC on June 2, 2017 is entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 662; *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

### b. The merits

To establish a claim of retaliation under Title VII, an employee must prove that (1) the employee engaged in a protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the employee's protected activity and the adverse employment action.[6] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

Here, plaintiff has sufficiently pled all three elements of a prima facie case. First, plaintiff alleges that she filed a charge with the EEOC on June 2, 2017. It is well established that filing a charge with the EEOC qualifies as a protected activity. *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990). Second, it is undisputed that plaintiff suffered an adverse employment action when she was terminated. (ECF No. 10 at 10). Third, the temporal proximity between plaintiff's alleged protected activity and her termination create a plausible inference of causation. *See Breeden*, 532 U.S. at 273-274 (holding that temporal proximity between an employer's knowledge of protected activity and an adverse employment action must be "very close" to establish a prima facie case by itself; three to four months may be insufficient).

Accordingly, the court will deny defendant's motion to dismiss with regard to plaintiff's second retaliation claim. *Cornwell*, 439 F.3d 1034-35.

---

[6] Should plaintiff decide to bring her retaliation claim under the ADEA, the analysis would be the same. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996).

### IV. Conclusion

In light of the foregoing, plaintiff has failed to plausibly allege a claim under § 1983. In addition, plaintiff has failed to plausibly allege claims of hostile work environment or discrimination under Title VII or the ADEA. Finally, plaintiff has failed to plausibly allege her first retaliation claim.

Conversely, plaintiff has plausibly alleged her second retaliation claim.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss (ECF No. 10) is GRANTED in part and DENIED in part, consistent with the foregoing.

The clerk shall lift the stay in the instant case.

DATED August 6, 2018.

_____
UNITED STATES DISTRICT JUDGE